UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| United States of America, | File No. 19-cr-81 (ECT) |
|---|---|
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Ralph Weekly, | |
| Defendant. | |

---

David P. Steinkamp, United States Attorney's Office, Minneapolis, MN, for Plaintiff United States of America.

Jean M. Brandl, Brandl Law, LLC, Minneapolis, MN, for Defendant Ralph Weekly.

---

Defendant Ralph Weekly has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF Nos. 91, 99.[1] Weekly previously pleaded guilty to possession of a firearm by a felon in violation of 18 U.S.C. §§ 2, 922(g)(1), and 924(a)(2) and is serving a 78-month term of imprisonment. ECF No. 83; *see* ECF No. 46. Weekly is currently in the custody of the Bureau of Prisons at the Federal Correctional Institution in Pekin, Illinois ("FCI-Pekin"), and his projected release date is September 18, 2024. *See*

---

[1] The Government does not dispute that Weekly has fully exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). *See generally* ECF No. 102. Weekly submitted a request for a reduction in sentence and compassionate release to the warden at FCI-Pekin on June 30, 2020, and the warden denied the request on July 24, 2020. ECF Nos. 99-1, 99-2. Weekly then filed a pro se motion for compassionate release on September 3, 2020. ECF No. 91. Counsel was subsequently appointed and filed a second motion for compassionate release. ECF No. 99. Weekly's motions for compassionate release therefore are properly before the Court. *See*

Fed. Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited May 25, 2021); ECF No. 99-4. Weekly requests immediate release[2] in light of the COVID-19 pandemic and physical conditions that elevate his risk of severe medical complications should he contract COVID-19 a second time. ECF No. 99. The Government opposes Weekly's motion. ECF No. 102. For the following reasons, Weekly's motion for compassionate release will be denied.

Under 18 U.S.C. § 3582(c), a district court generally "may not modify a term of imprisonment once it has been imposed" except in limited circumstances. One of the few exceptions is the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A). Section 3582(c)(1)(A) permits a court, upon motion of the defendant, to reduce a term of imprisonment "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that— [] extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." A defendant bears the burden of showing that he

---

[2] Weekly suggests that he could be required to "serve a period of home confinement while on supervised release." ECF No. 99 at 26. In his reply memorandum, Weekly further clarifies that he is not seeking a transfer to home confinement but rather a reduction in his term of imprisonment to time served and a period of home confinement "as part of his probation conditions." ECF No. 103 at 7; *see* ECF No. 99 at 21, 26. To the extent Weekly may have requested previously that he serve the remainder of his term of imprisonment on home confinement, that request is denied. *See* ECF No. 91 at 16. The authority to determine the placement of prisoners, including placement on home confinement, rests solely with the Bureau of Prisons. *See* 18 U.S.C. §§ 3621(b), 3624(c)(2); *United States v. Sesay*, No. 16-cr-265(1) (ADM/HB), 2020 WL 3259214, at *1 (D. Minn. June 16, 2020); *United States v. Walker*, No. 16-cr-33(1) (DWF/LIB), 2020 WL 2490101, at *2 (D. Minn. May 14, 2020); *United States v. Brown*, No. 12-cr-172(3) (SRN), 2020 WL 1922567, at *2–3 (D. Minn. Apr. 21, 2020).

is entitled to a reduced term of imprisonment. *United States v. Muhlenhardt*, No. 14-cr-162 (SRN/JJK), 2020 WL 4697112, at *3 (D. Minn. Aug. 13, 2020).

The Sentencing Commission's policy statement has not been updated since § 3582(c)(1)(A) was amended through the First Step Act to allow defendants to file motions for sentence reduction directly with the court. Previously, § 3582(c)(1)(A) limited the court's consideration of motions for compassionate release to motions made by the Director of the Bureau of Prisons. *See* U.S.S.G § 1B1.13, cmt. n.4. Accordingly, the policy statement reflects the previous statutory language and begins with the phrase "Upon motion of the Director of the Bureau of Prisons[.]" *Id.* § 1B1.13. A catch-all provision of the policy statement also provides for the consideration of extraordinary and compelling reasons not specified in the statement "[a]s determined by the Director of the Bureau of Prisons." *Id.*, cmt. n.1(D). As a result, there is some question as to whether the policy statement applies to motions filed by defendants. The Eighth Circuit Court of Appeals has not yet addressed the issue, but a substantial number of the circuit courts of appeals have held that § 1B1.13, including the commentary to it, is not an "applicable policy statement" with respect to motions filed by defendants, leaving courts free to independently exercise their discretion in such cases in determining what constitutes extraordinary and compelling circumstances. *See United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. Shkambi*, 993 F.3d 388, 390–93 (5th Cir. 2021); *United States v. McGee*, 992 F.3d 1035, 1050–51 (10th Cir. 2021); *United States v. McCoy*, 981 F.3d 271, 280–84 (4th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1179–81 (7th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1109–11 (6th Cir. 2020); *United States v. Zullo*, 976 F.3d

228, 234–38 (2d Cir. 2020). *Contra United States v. Bryant*, __ F.3d __, No. 19-14267, 2021 WL 1827158, at *1–2, 5–13 (11th Cir. May 7, 2021) (holding § 1B1.13 is applicable to all § 3582(c)(1)(A) motions and "Application Note 1(D) does not grant discretion to courts to develop 'other reasons' that might justify a reduction in a defendant's sentence" because the procedural change allowing defendants to file motions "does not affect the statute's or 1B1.13's substantive standards, specifically the definition of 'extraordinary and compelling reasons'"). Despite finding the policy statement to be inapplicable, courts have still deemed it instructive, "provid[ing] a working definition of 'extraordinary and compelling' reasons" that "can guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180. As in other cases in this District, the policy statement will be treated in the same manner here. *See United States v. Logan*, ___ F. Supp. 3d ___, No. 97-cr-99(3) (PJS/RLE), 2021 WL 1221481, at *3 (D. Minn. Apr. 1, 2021) ("In the absence of clarification from the Eighth Circuit, this Court has treated § 1B1.13 as providing useful guidance about how to exercise its discretion under § 3582(c)(1)(A), but not as binding.").

The Sentencing Commission's policy statement concerning prison sentence reductions under § 3582(c)(1)(A) lists several examples of extraordinary and compelling reasons that justify a sentence reduction, including a defendant's medical condition, age, and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). In particular, a defendant's medical condition presents an "extraordinary and compelling" circumstance if the defendant is (1) "suffering from a terminal illness" or (2) "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging

4

process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* § 1B1.13, cmt. n.1(A). The catch-all provision further provides for the consideration of reasons "other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13, cmt. n.1(D).

A defendant requesting compassionate release due to COVID-19 must show both a "particularized susceptibility" to the virus and "a particularized risk of contracting the disease at his prison facility." *See United States v. Robinson*, No. 17-cr-318 (SRN/DTS), 2020 WL 4463363, at *5 (D. Minn. Aug. 4, 2020) (citation omitted); *United States v. Thomason*, No. 19-cr-05 (ECT/SER), 2020 WL 4915833, at *1 (D. Minn. Aug. 21, 2020) (collecting cases). In his motion, Weekly cites a variety of medical and physical conditions—his weight, undiagnosed chest pains, history of smoking, and race—that he argues make him particularly susceptible to becoming severely ill from COVID-19. ECF No. 99 at 3–5 (citing Ctrs. for Disease Control & Prevention, *People with Certain Medical Conditions*, Coronavirus Disease 2019: People at Increased Risk, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021) (stating obesity, a history of smoking, heart conditions, and "[l]ong-standing systemic health and social inequities" that affect many racial and ethnic minority groups can make an individual "more likely to get severely ill from COVID-19"). With respect to his race, Weekly references data showing that non-Hispanic Black people experience higher rates of death from COVID-19 and are five times more likely to be hospitalized than their white counterparts. ECF No. 99 at 4–5. Weekly

5

states that he contracted COVID-19 in December 2020 and that he continues to experience symptoms of COVID-19, including headaches, body aches, severe chest pains, diarrhea, and problems with breathing, leading him to believe that he is a COVID-19 "long-hauler." ECF No. 103 at 2; ECF No. 103-1 at 19. Weekly also states that he is "afraid of reinfection," particularly in light of the persistence of symptoms from his initial infection and new variants of the virus. ECF No. 103 at 4–5. Weekly acknowledges that he was offered a COVID-19 vaccine in February 2021 but declined it, *see* ECF No. 103-1 at 20, 29, because "he had been given information that the vaccine was not safe for people who were still suffering from the effects of COVID-19." ECF No. 103 at 3. He states that he will get the vaccine "as soon as a doctor confirms it is safe to do so." *Id.* The Government does not dispute that Weekly suffers from medical and physical conditions that render him particularly vulnerable to COVID-19 but argues that those conditions no longer constitute extraordinary and compelling reasons under § 3582(c)(1)(A) because he has "[s]uccessfully [r]ecovered from COVID-19 and [r]efused the COVID-19 [v]accine." ECF No. 102 at 13–15.

Weekly's medical records document a history of using tobacco products and obesity. ECF No. 99-3 at 10, 32, 45. They also note that Weekly has complained of chest pains, but during physicals in November and December 2019, Weekly denied any cardiovascular issues, and the results of an EKG performed by prison medical staff in August 2020 did not show any "significant abnormalities." ECF No. 99-3 at 1–2, 7, 18, 38; ECF No. 103-1 at 30. Weekly's medical records confirm that he tested positive for COVID-19 on December 12, 2020, and list him as "[a]symptomatic" at that time. ECF No. 103-1 at 11,

6

19.  By January 4, 2021, they show him as "recovered."  *Id.* at 10.  A note from February 22, 2021, states that Weekly requested to be seen by prison medical staff "for ongoing covid symptoms," but it does not document any specific symptoms.  *Id.* at 1.  Weekly was informed "that in some people, symptoms may continue for 6–9 months or longer," that a doctor would be informed of his request, "but that due to this being common for th[e] disease, that the [doctor] would probably decline to see him and that he should continue to increase fluids, use Tylenol as needed and return with new or worsening symptoms."  *Id.*

Weekly's history of smoking, weight, and race are documented in his medical records and recognized by the CDC as factors that may make him particularly susceptible to COVID-19.  But Weekly already contracted COVID-19 and, according to his medical records, was asymptomatic and has recovered.  Weekly cites cases in which other courts have found the risk of reinfection to be an extraordinary and compelling reason to grant compassionate release.  ECF No. 99 at 18–19; ECF No. 103 at 8–9.  In many of those cases, the inmates suffered from severe symptoms, and, in some cases, were hospitalized because of their infection.  *See, e.g., United States v. Malufau*, 474 F. Supp. 3d 1106, 1107–08 (D. Haw. 2020) (granting sentence reduction for inmate with several medical conditions, including asthma, obesity, and diabetes, who "tested positive for [COVID]-19 and was hospitalized for nine days"); *United States v. Lipp*, No. 17-cr-40057 (D. Kan. June 29, 2020), ECF No. 52 at 1 (granting unopposed motion to reduce sentence and noting inmate already "contracted COVID-19 . . . which caused him to be hospitalized," that COVID-19 caused him to contract pneumonia and require oxygen, and that "[a]lthough he has recovered, health concerns remain"); *United States v. Fleming*, No. 17-cr-362 (C.D. Cal.

7

Jun. 24, 2020), ECF No. 87 at 8–12 (describing "increasingly severe" symptoms of 67-year-old inmate's infection that persisted for weeks). Although Weekly reports ongoing symptoms, his medical records suggest that his symptoms are not serious enough to warrant medical attention beyond increasing fluids and taking over-the-counter pain medication as needed. *See, e.g.*, *United States v. Seeman*, No. 18-CR-101-CJW-MAR, 2020 WL 4193272, at *5 (N.D. Iowa July 21, 2020) (concluding that defendant's medical conditions did not amount to an extraordinary and compelling reason when the record showed he had experienced mild symptoms when infected with COVID-19, there was no indication his health was failing in any way, and there was "little reason to believe his illness would be significantly greater than it was the first time" if he were reinfected).

Assuming nevertheless that Weekly has demonstrated that his medical and physical conditions make him particularly susceptible to COVID-19 should he be reinfected, those conditions alone are not determinative with respect to his motion. *See, e.g.*, *United States v. Daniels*, No. 15-127, 2020 WL 4674125, at *3–4 (E.D. Pa. Aug. 12, 2020) (recognizing defendant's obesity increased risk of severe illness but denying motion due to the "lack of viral presence" in his facility, the fact that the defendant had not yet served even half of his 180-month sentence, and concerns that the defendant remained a danger to community); *United States v. Hasan-Hafez*, No. 16 Cr. 221-2 (KPF), 2020 WL 2836782, at *5 (S.D.N.Y. June 1, 2020) (concluding "the danger that [the defendant] faces from infection with COVID-19, even accounting for his medical conditions, does not amount to an extraordinary and compelling reason" and that, even if it did, the court would deny the motion based on its consideration of the § 3553(a) factors). Weekly has not demonstrated

8

a particularized risk of being reinfected with COVID-19 at FCI-Pekin. Although there was a COVID-19 outbreak in FCI-Pekin in December 2020, there are currently no reported active cases of COVID-19 among inmates at FCI-Pekin and only eight reported active cases of COVID-19 among prison staff. *See* Fed. Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/index.jsp (last visited May 25, 2021). All inmates at FCI Pekin who have contracted the virus since the inception of the pandemic have reportedly recovered. *Id.* Additionally, 123 staff members and 553 inmates are fully inoculated as of May 24, 2021. *Id.* Further, the actual risk of COVID-19 reinfection is largely unknown at this time, and the CDC states that while cases of reinfection have been reported, they "remain rare." Ctrs. For Disease Control & Prevention, *Reinfection with COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited May 25, 2021).

The applicable factors in § 3553(a) also weigh against granting Weekly's motion. Section 3553(a) directs courts to consider, among other factors,

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct; [and]
> >
> > (C) to protect the public from further crimes of the defendant[.]

9

18 U.S.C. § 3553(a).[3]

The Government argues that a reduction of Weekly's sentence is not warranted given the seriousness of his offense and his history of violent behavior and incarceration. ECF No. 102 at 15–19. The Government also argues that the length of time Weekly has served in this case thus far is insufficient to serve the purposes of sentencing set forth in § 3553(a) and would result in unwarranted sentencing disparities. *Id.* at 17. To the contrary, Weekly argues that he does not intend to repeat his offense, that his more recent criminal history does not include any convictions for violence or drugs, that he has no disciplinary record at FCI-Pekin and has participated in available programming, and that the time he has already served in custody is sufficient to satisfy the purposes of sentencing. ECF No. 99 at 9–11, 20–24; ECF No. 103 at 6–7, 12–13.

The underlying circumstances of Weekly's offense in this case are serious. After observing Weekly engaging in suspected hand-to-hand drug transactions, law enforcement officers stopped Weekly and recovered a stolen firearm and controlled substances from his vehicle. *See* Plea Agreement ¶ 3 [ECF No. 54]; PSR ¶ 7 [ECF No. 70]. In his plea

---

[3] The Sentencing Commission's policy statement requires a court to determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" before a defendant's sentence may be reduced. U.S.S.G. § 1B1.13(2). As discussed above, most courts have deemed the policy statement inapplicable to compassionate release motions filed by defendants. Although the First Step Act does not require the same finding of an absence of risk of harm to the public, it still requires consideration of the factors in § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A). Section 3553(a)'s direction to consider the nature and circumstances of the offense and the need to protect the public from further crimes of the defendant reflects essentially the same consideration as the policy statement.

agreement, Weekly also admitted to unlawful conduct on several other occasions, including visiting a gun store, possessing multiple firearms and ammunition, and shooting at an occupied vehicle used by his ex-girlfriend. Plea Agreement ¶ 3; PSR ¶ 15. Though Weekly's criminal record following his release from state prison in 2014 does not reflect any convictions for crimes of violence or controlled substance offenses, each of the incidents described above occurred in 2018 and 2019. Plea Agreement ¶ 3; *see* PSR ¶¶ 39–51. Compounding concerns regarding his criminal history, Weekly has served less than forty percent of his actual sentence—approximately 27 months. Cutting Weekly's sentence by more than half would not serve the purposes of sentencing set forth in § 3553(a). *See, e.g.*, *Muhlenhardt*, 2020 WL 4697112, at *4; *United States v. Holmes*, No. 08-495, 2020 WL 4504440, at *3 (E.D. Pa. Aug. 5, 2020). It is notable that Weekly previously was incarcerated for approximately 46 months for his involvement in a shooting, which ultimately proved ineffective in deterring him from engaging in further conduct involving firearms. *See* PSR ¶ 40. Although Weekly's exceptional disciplinary record at FCI-Pekin and statements from Weekly's current and former girlfriends indicate Weekly has shown signs of rehabilitation, *see* ECF No. 103 at 6–7, they do not overcome the other relevant considerations under § 3553(a) so as to warrant Weekly's release at this time.

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendant's Motion to Reduce Sentence [ECF No. 91] and Emergency Motion for Sentence Reduction [ECF No. 99] are **DENIED** without prejudice.

Dated: May 25, 2021             s/ Eric C. Tostrud
                                                  Eric C. Tostrud
                                                  United States District Court